Okay, good morning, Your Honor. Joe Cartoni on behalf of the plaintiffs, I would like to reserve approximately three minutes for rebuttal. Keep your eye on it. We'll try to help you. Okay, I will, Your Honor. Thank you. I think the most important thing to understand about this case is that we are not claiming to enforce, not trying to get attorney's fees arising out of the breach of contract. You have to understand there's two, there's attorney's fees that are talked about in the briefs and in this case that have to do with the product's liability case, which is the underlying case. And then there's the attorney's fees associated with enforcement of the contract. We are not seeking one dime for the enforcement of the contract. What happened with respect to this case is that we started with, we have a product's liability case of significant injury and significant importance to a husband and wife and their family. A gentleman is brutally injured in a Ford automobile, passenger, when going around a corner, door flies open, he's thrown out, car rolls over, he gets brutally injured. Counsel, your opponent says that this case is controlled by Olson v. Arnett. That Olson v. Arnett absolutely covers the legal principle here. You disagree with that. Absolutely. But let's say for the sake of argument, we agreed with your counsel that Olson did cover this situation, but that there was no controlling California Supreme Court case which made that same point. Should we certify this case to the California Supreme Court? Well, if you're going to certify this to the California Supreme Court, I would appreciate trying to distinguish the difference that I'm making with respect to these attorney's fees. To go along with Olson, Olson says specifically that it is attorney's fees associated with the breach of contract. We have specific attorney's fees associated with the breach of contract. We're not suing on those. We took two writs. This went on for five years that we were just trying to get a CCP 998 offer, get them to pay the money according to their own CCP 998 offer. But you ultimately got that done, right? Excuse me? You ultimately got that done. Five years later. And at the time there was a settlement agreement that included a release, right? No. No. I don't actually recall whether or not there was a settlement agreement with the release at all. I do know that there was the offer that the defendants made is incorporated in their own language, and I put it out at page, I think it's on 30, of our brief. Let me find it. Our opening brief. Doggone. Timer keeps going. I am going to find it finally. Here's what the offer was. Pursuant to the California Code of Civil Procedure, section 998, defendant Moore Ford Motor Company hereby offers to allow a judgment of dismissal with prejudice if this action to be entered. They said they were going to allow a judgment to be entered in this action. They did not. We signed the paper. We did exactly what we were supposed to do, send it back to them. They would not allow it. They filed motions to stop it and everything else that could be done. It went on for five years. Yeah, eventually got our money. But during those five years, I had to be worried about the case going to trial. If it's not settled, we're going to trial. Well, this is a case of the complexity associated with liability. Experts crash test. Can you go over again how the 998 really works? As I understand it, and correct me if I'm wrong, a 998 offer is made, and then there's a 30-day window to accept. Within that 30-day window, your clients accept it, but the clerk, for whatever reason, didn't enter a judgment. Yep. So until they enter a judgment, though, litigation continues, correct? That's the problem, yes, Your Honor. Both sides were in a position where no judgment was entered erroneously for whatever reason, and so both sides prepared for trial until the court deemed the judgment can be entered. And at that point, Ford promptly paid. Did I get the sequence correct? The only part I would really quibble with is the for whatever reason. It wasn't entered for reasons of a bad clerk or something like that. It wasn't entered because counsel made motions to stop it. We made motions to get the settlement done. They made motions to stop it. Now, Judge Orrick sat up there and says, you know, I don't know what was going on in San Joaquin County for five years. I get it. And I don't either. But it's five years. It's a ministerial act. For five years, Ford Motor Company, briefing this thing, they know the law. They have hundreds of good lawyers who know this is a ministerial act. This needs to have been done. Counsel, your position is that with the offer and acceptance, there was a contract and that Ford breached that contract by their actions, and Judge Orrick found that whether that's true or not, you have no cognizable damages. Yes, I agree. And that's why I disagree with Judge Orrick with that respect. But the emphasis on this breach of contract is what I just read. Ford Motor Company hereby offers to allow judgment of dismissal with prejudice. They did not. A basic breach that cost five years and $700,000, two crash tests that cost a hundred and a quarter each, depositions of a complicated medical situation that involved neurological, orthopedic, psychological. This case was settled by me with the husband and wife a week and a half after he had a seizure. Mr. Walker had a seizure during a deposition being conducted by Ford. That was his second seizure during depositions conducted by Ford. I was going to kill the fellow. There was ambulances, there was everything under the sun, and there's no question he had seizures on both those occasions, so we had to settle. Is it correct that Ford paid the $50,000 to your client's wife without a judgment having been entered? Exactly, Your Honor. Exactly. There was a $50,000 for the wife, signed it. There was $850,000 for the husband, signed it, sent them both off. They chose the $50,000. No judgment was ever entered before they paid. No, absolutely not. No, they paid years before the judgment was ever entered. They paid that because that's the act. They'd say right there, if it's ministerial, it's ministerial. I mean, they're reading all the law books I'm reading, they're reading all the cases I'm reading, yet they're not settling the case. They're not paying me the money. Counsel, was the $50,000 paid roughly contemporaneously with the time that the money was paid to the husband? Oh, absolutely not. Five years earlier. The $50,000 was paid in, I don't know, but it was not enough to require me a letter to say, hey, pay it. It just came, but there was no $850,000. So, you know, the duplicity of the argument that somehow it has something to do with the clerk not doing something is, I think, really just a strawman of an extraordinary nature. It was a ministerial act. Ford Motor Company absolutely cost us a fortune, and they knew they cost us a fortune. We had to do all the work to prepare this case for trial, and before I finally dismissed the case, which I likely would have done on the day of trial because I'm not going to kill my client, we made one last shot with the trial judge. And the trial judge at San Joaquin County looked at this and goes, don't get it. This case settled five years ago, period. And so the trial judge entered the judge. All that's true, and construed exactly as you say. I'm still puzzled as to how you get attorney fees. The attorney's fees arises out of the breach of contract. Here's the breach. They're to allow judgment. Just the breach of contract by itself. What contract? The contract created by the CCP 998 offer. So the settlement contract. The offer itself. They offer to allow judgment for $850,000. I accept. Breach of contract when they don't do it. That's a settlement contract, isn't it? That's a settlement contract, yes. It's a CCP 998. Between the 998 and the settlement contract. It's out of the same transaction. Your Honor, I'm sure that we could dance on the head of the pen for a while. I just want to know what contract is the basis of your attorney fee plan. That's what it is. It's a breach of contract. I say a contract. All right, so you say it's a breach of contract. But as my colleague and I are both wrestling with here, you say it was the very offer of the CCP 998. When it was accepted, that was a contract. But that yielded a settlement agreement. Did it not? I don't think so, Your Honor. We just went all the way down. The settlement agreement was never settled? I don't think so. I really don't think so. As I sit here, the court finally said it was settled back then for $850,000. Then we had a motion on for whether or not it was known pro-trunk. Counsel, there's no need under 998 for a settlement agreement, correct? If there's an offer and an acceptance and then the judgment, it's all done because whatever terms there need to be are supposed to be in the offer letter, correct? That's correct. Yes, Your Honor. Now, you do see 998s that say upon execution of a standard form settlement agreement. That will be in the offer. But that wasn't in this one. No. Let's just say all you have is a 998. You offer, they accept. Okay, so where do the attorney fees come from? There's nothing in 998 that says you're entitled to attorney fees, is there? When they say, no. There's nothing that's specific about having attorney's fees. Where do the attorney fees come from? Under the American rule, you don't get attorney fees unless there's a contract, a statute, or the court implies something under another constitutional rule. If I'm seeking to enforce the contract, these attorney's fees and these costs, $100,000 for crash tests, those costs are not to enforce this contract. Those costs were to go to a trial in a personal injury case. Those are costs that are related only to their breach that they knew were going to happen. They knew they were going to happen by not paying the 850. So you're saying that because the court failed to enter the 998 judgment, if you will, that you are blaming Ford for that and that the costs involved in their preparing and your preparing for trial should be borne by Ford because of what the clerk did. Because the clerk didn't enter it because Ford made motions to stop it. Also... If that's the case, then you didn't have a contract. And, indeed, the 998 probably was rejected because 998, you make an offer, it's either accepted or it's not accepted. That's all that happened here. It was accepted. Okay. Then what was the motion that had something to do with objecting to the... We made motions and they threw a... To try to get the court to enforce the agreement. Well, it went back to they said, well, there should be an extra element in this contract. There should be in there that we have to take care of Medicare and we have to take care of other things like that there. They're not in the contract. So the first judge who heard it, Judge Hawley, said something to the effect that if you get a letter from Medicare saying that there's no money outstanding or owing, that that wasn't part of the contract. It didn't have to do that. Whatever. A couple of months, a few months later, Medicare finally gave us a letter. We sent that to them. So we now have the letter. But they make another motion. Hawley's no longer on the case. New judge. New judge says, well, I don't see that there's a proper acceptance of this contract, blah, blah, blah, because of the arguments that Ford is making. Only because of Ford's arguments. Only. Okay, well, let's say you're right. You wanted to stay three minutes. You're eating into that time. Now, why don't you take, if you will, save that for your rebuttal. Let us know why you're entitled to attorney fees based upon 998. Let's hear from Ford, okay? And then we'll get back to you in rebuttal. Does that work? That works, Your Honor. Thank you. Good morning. Good morning, Your Honors. There was a lot said about the factual background to this case. I'd just like to take 60 seconds just to correct some of the statements, which I believe were incorrect. The 998 offer that Ford served on July 11, 2011, was served before the two seizures plaintiff claimed to have had. Before Ford had served that offer, it had notified plaintiffs of the new Medicare Second Repair Act and the obligations under federal law for both sides to comply with that with respect to conditional payment disclosures being made to the government if the case was ever resolved. After initially accepting the 998 in August, late August, plaintiffs declined to comply with federal law. After that, on September 27, it was plaintiff who rescinded the settlement offer. A plaintiff who, when they filed 998, never filed an actual judgment, as you're supposed to do. They rescinded the settlement offer on September 27, telling Ford the settlement was off, get ready for trial. Ford sent plaintiffs a letter saying, please reconsider on October 4. Next day, October 5, plaintiffs said no, deposition notice, get your experts ready for deposition. We're proceeding for trial. Three months proceeded thereafter, three months, and what changed? Where are these changes in the record? Could you give us a citation of where they said basically we're not doing this anymore? Certainly. At excerpts of record 412 to 417, there is a rendition of the background at 157. But, counsel, this case was decided on the pleadings, correct? Correct. Not on a motion for summary judgment. Correct. So we need to take the facts as they're set forth in the pleading, correct? Well, all of these facts were judicially noticed, and Judge Oreck accepted judicial notice of the state court record on this. But he granted a motion to dismiss, not a motion for summary judgment, correct? Correct, and accepted judicial notice of the state court records as well that were provided. And what those show, that it wasn't until a few months after plaintiff rescinded, then declined to reconsider and renewed their rescission of the settlement proposal, the plaintiffs did the about-face and suddenly decided they want to settle. Months later, after a lot of trial prep occurred, why did that occur? Because both sides at that time acquired a surveillance videotape taken by the workers' comp provider showing that the plaintiff who claimed to be disabled in oxygen was actually perfectly normal, had no disabilities, was out on the golf course playing golf, was doing a lot of normal activities, no wheelchair requirement, no oxygen tank requirement. And as soon as plaintiffs saw that and we saw that, months later, after plaintiffs had twice rescinded the settlement proposal, they suddenly had a change of heart and they wanted to try and move to enforce the settlement they'd already rescinded twice. It was for that reason that with that record, that state record that Judge Hawley had and Judge McNaught had, both those judges declined to enforce. They found that plaintiff had rescinded the settlement offer that Ford had made. Now it wasn't until years later in 2016 when Judge Ross and parties agreed to have plaintiffs proceed with a proper motion that they had not brought before to have judgment entered that Judge Ross, under new cases that had come down then, went ahead and entered judgment. In doing so, Judge Ross, who was also familiar with the full state court record, provided plaintiffs with a $430,000 interest payment post-judgment by doing a nunk-pro-tunk. And in doing so, Judge Suarez referred to that as an extraordinary windfall for plaintiffs, saying he was struggling with the equities of that. And Judge Ross said it was simply not fair to Ford. But those judges, all four judges have a full state court record. Plaintiffs then went ahead and appealed in the state court. But they had previously done a writ petition to the court of appeal, a petition for review to the California Supreme Court. There was a full state court record on this litigation. But, counsel, what Judge Oreck decided was that this case couldn't proceed because there were no cognizable damages, correct? Correct. Not on what you're saying. He said that these attorney's fees are not recoverable because of the American rule, and he said that emotional distress is not recoverable because of general California contract principles, correct? That's exactly right.  Those are the issues before the court. Of course, this court can also affirm on the other grounds that Ford raised as well, and there are several additional grounds that Ford raised to affirm Judge Oreck's decision down below. But on the emotional distress issue, plaintiff's argument is that Ford was aware that Mr. Walker was going to have these two seizures in the future after Ford had already served his 998 offer, and so they were part of Ford's thinking. And so that's where that consideration comes in. Counsel, is there any California Supreme Court case that says what Olson says, which is that the American rule and Section 1021 bar the award of attorney's fees as damages that are incurred in a collateral action, that is, not the action that's brought to enforce the agreement? Is there any California Supreme Court case squarely on point? Go ahead. Olson is a case that's squarely on point. That was a 1989 case. Olson is the Court of Appeal. Correct. So is there any California Supreme Court case squarely on point? Not squarely on point. There's California Supreme Court cases reiterating the American rule that applies. There's a host of other cases like Nevalier in the Court of Appeal that reiterate the American rule. Olson is squarely on point on these facts. It's been on the books since 1989. No court of appeal has disagreed with it. The California Supreme Court has never had the occasion to revisit it. And as the only California Court of Appeal case that's uncontroverted, I believe the phraseology is that's very important data as to how the California Supreme Court would rule. Counsel, I always understood the American rule, not necessarily in the context of California law, as being that the American rule barred you from recovering your attorney's fees in the extant action, absent an agreement or a statute, but that the American rule never barred you from recovering as damages attorney's fees that you had to incur other than with regard to the lawsuit brought to enforce a contract. So it seemed to me that although Olson says what you say, it says that that isn't the American rule. Well, we're talking about two sides of the same coin here. If in Olson, the party in Olson sought to seek attorney's fees for both litigating the underlying lawsuit and for at the same time for trying to enforce the settlement agreement. I agree. And the American rule would cover both of those, absent a contractual agreement to the contrary. Well, again, that's never been my understanding of the American rule. My understanding of the American rule is that it bars the recovery of attorney's fees in the action that are incurred in bringing the breach claim, but it doesn't bar the award of attorney's fees that are damages caused by the putative breach. I respectfully, that's not my understanding of the American rule. And I think some of health care, the U.S. Supreme Court case we cite in our brief and we describe more fully in our briefing to Judge Orrick, talks about the risks of endless collateral litigation if we're in a situation where we have a subsequent action brought to seek fees and costs for the initial action. It just creates a morass which is not contemplated by the American rule. The reality is that if plaintiffs had any claim for attorney's fees, if they had any claim for costs, they should have brought it down below in the trial court in state court where there was a full record, where the case was pending, where the memorandum of costs could have been submitted by plaintiffs, where plaintiffs could have made their motion there. In fact, plaintiffs did try and bring a breach of settlement action in state court and Judge McNaught denied that. And that was part of their appeal to the state court court of appeal, which then they decided that they weren't having any luck in state court, so why don't we try our luck in federal court? That's what we have here. We had four judges in state court agree with Ford's position. We had the court of appeal twice reject plaintiff's petition, the petition for the California Supreme Court, and then plaintiffs, when they bring their final appeal on this, suddenly decide to dismiss and try their luck here. And the American rule, if it's not applied to these situations, first of all, plaintiff has not identified a single case, nor are we aware of a single case where a party in a two-party lawsuit proceeds to litigate the entire case and files a separate case seeking fees for that underlying case and costs. And under Erie, it shouldn't be the role of plaintiffs asking this court to try and drastically expand California law to contemplate that situation. If suppose this case was allowed to proceed in federal court the way plaintiffs contemplate, we'd have another ten years of litigation where we'd be raising the fraud and inducement of the contract, the reasonable sum of fees, the emotional distress claim, their veracity, plaintiff's actual injuries. We'd be relitigating this entire case in federal court over many, many years. And that's just not what the American rule contemplates. Obviously, I gather you disagree with my colleague about what is included within the American rule. Ford makes an allegation that the district court had no jurisdiction in the case because Walker didn't satisfy the amount of controversy because he can't cover attorney fees and damages for emotional distress and so on. Would you argue that a little bit more? Does that ultimately get us back to the question of what's covered by the American rule? Correct. And Judge Ork made a very prescient observation there that plaintiffs seem to be confusing what he can recover for the case versus what he can recover under the cause of action. The cause of action plaintiffs chose to plead, and they're stuck with that because they declined to amend notwithstanding Judge Ork's invitation, but the cause of action they pleaded was solely breach of contract. Under that, they cannot recover emotional distress damages, and they cannot recover attorney's fees. Setting aside the question of how Mr. Walker is even a proper party for attorney's fees when the lawyers on the other side are the actual party there. He argues that the CCP 998 offer and acceptance was a contract, and it was the breach of that contract from his perspective that yields the attorney fees. Would you comment on that, please? Certainly. That's incorrect. That's contradicted by the 998 statute. It's also contradicted by the Milosevic versus Sacramento Medical Center case, which we cite in our brief, and that's a court of appeal decision in 1984-1, never been contradicted by any other court of appeal, nor the California Supreme Court. And it's consistent with 998 that the actual contract is when the judgment is entered. Counsel, doesn't the California Supreme Court say in numerous cases, I don't think they're cited in the briefs, that offer and acceptance under 998 are governed by general contract principles and that general contract principles apply to determining whether there's a contract unless those contract principles would interfere with the public policy inherent in 998? Doesn't the California Supreme Court say that numerous times? I'm not aware of a California Supreme Court disagreeing with a 998 statute or with Milosevic, which say the same thing, that the actual contract that's entered, and I'll quote from Milosevic, which states that if the offer is accepted, a judgment encompassing the terms and conditions is entered, section 998 provides that such a judgment shall be deemed to be a compromised settlement. The court went on to state that the judgment is regarded as a contract between the parties. If that's the case, help me with what I understand to be actions by both parties that suggest there wasn't a contract, because you all said you've got to comply with Medicare, therefore all the terms of the contract perhaps were not understood. They rejected that. They then later rejected the contract itself. You then found out that he wasn't really disabled. You rejected it. So basically, was there ever a full meeting of the minds on this, at least at that point, when the original 998 offer and acceptance occurred? Well, there was questions as to the validity of a 998 as well at that time, which would be a separate issue that would have to be litigated in federal court. Again, showing the folly of not applying the American rule here. But plaintiffs rescinded in September. They declined our proposal to un-rescind. And so on October 5, we continued with months of trial preparation. And then after plaintiffs sought to find out by the video and sought to enforce, months later at that point, we opposed. And it wasn't until 2016 the judgment was entered. It was entered. The non-protonque is obviously a legal fiction that applies solely to the post-judgment interest. Was it entered later because the parties really hadn't agreed before? Pardon me? Was it entered later because the parties really hadn't reached an agreement before? Well, Judge Ross's reasoning in entering it was that his view was that plaintiff now brought a motion to have judgment entered. And his view was that judgment should have been entered in 2011. He disagreed with Judge. That's where the interest came from, right? Correct. Any other questions by my colleagues? I thank you very much, then, for your argument. Thank you. Your rebuttal from Mr. Walker's counsel. Thank you, Your Honor. That listening to that argument brought it all rushing back about the other issues that get thrown into this case that have nothing to do with the issues that are before us. Well, let's be sure about that. You base your argument on the claim that there is a contract represented by the 998 offer and acceptance. What I'm understanding is that Ford said, no, part of our offer is you've got to take care of the Medicare. You, at some point, rescinded that contract. So what is it? Do we have a contract? Don't we have a contract? We have a contract, Your Honor. We have an offer and we have an acceptance. That other stuff gets into arguments and stuff like that that really have no bearing on what we're talking about. Sure it does. If you have a contract, you don't have a contract. And I understand both sides at some point said, wait a minute, we don't have a contract anymore. The alleged rescission isn't a rescission. Let me just quote. Let me quote Ford Motor Company's counsel. You can debate whether you rescinded or, in fact, Ford rescinded and who argued what and whether the Medicare precondition had to be met. But isn't the bottom line, they made a 988 offer, you filed an acceptance, no judgment was entered, and the parties started to debate and bring motions and oppositions, but no court concluded that there was, in fact, a settlement dating back to the acceptance until Judge Ross finally entered that. So in the interim, why aren't the parties free to raise whatever arguments they believe is legitimate regarding the existence of the agreement? You raise your arguments, Ford raised its arguments, and apparently many courts agreed with Ford and it dragged on for a long time. The San Joaquin Superior Court, and let me quote from this March 2012 hearing. The court, does the defense agree that a 998 offer was made and accepted by the plaintiff, Ford Motor Company's lawyer, Mr. Heimovicky? There's no dispute about that fact, period. There was a contract. Now, for reasons of argument and stuff like that that you've just heard a bunch of it happening again, that got immersed. But what was really going on at that point in time was that Medicare letter. So when we did get that Medicare letter, we sent it off to them. Here's the Medicare letter. At that point, smelling a little bit of blood in the water, they said no. You know, that won't do it. And they didn't take the Medicare offer, which was Judge Hawley's first condition, that that was wrongly made because the contract spells out what has to be done. But there was what they asked for, and that they still wouldn't go for. You put the words punitive damage and Ford Motor Company into the State of California's jurisprudence, you're going to see all the cake.  Ford Motor Company litigates cases extremely hard, and every possible advantage they take advantage of, every possible chance. And what we have is the gaming of a system. Listen to me. Your time is up. Thank you very much for your argument. I know you feel strongly about it. I did not answer what I was supposed to answer, though. You used your time as you saw fit. Thank you for your argument. Thank you very much. The argument is submitted. Why it's recoverable is in the opening brief. Have a nice holiday. You too, Your Honor. Thank you.
judges: M. Smith, Nguyen, Bennett